UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **MAURA GREER ET AL** | **CASE NO. 2:23-CV-01243** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **SAUER CONSTRUCTION L L C** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

### MEMORANDUM RULING

Before the court are Motions for Summary Judgment [docs. 76, 78, 79] on the third-party complaint [doc. 16] filed by Sauer Construction LLC against RRAC Contractors Inc. and Travelers Indemnity Company of America. The motions are all opposed. Docs. 83–85.

### I.
### BACKGROUND

This suit arises from the death of Logan Greer, following an accident that occurred on November 1, 2022, at Fort Johnson, Louisiana. Plaintiffs allege as follows: On that date Greer, who was employed by RRAC Contractors Inc. ("RRAC"), was performing a pressure test on heating and cooling water piping systems underneath a barrack at Fort Johnson, Louisiana, under a subcontract between RRAC and general contractor Sauer Construction LLC ("Sauer"). Doc. 1, ¶¶ 2–5. As he attempted to tighten the bolt on a water pipe with a battery-operated impact wrench, the bolt sheared and the coupling released. *Id.* The excessive pressure in the system then swung the pipe end and fittings towards Greer, striking him in the face and neck with great force and causing severe injuries that ultimately resulted in his death. *Id.*

Greer's surviving spouse filed suit in this court on behalf of herself and their minor child, raising state law claims of wrongful death and survival action against Sauer and invoking the court's diversity jurisdiction, 28 U.S.C. § 1332. Doc. 1. Sauer then filed a third-party complaint against RRAC and its insurer, Travelers Indemnity Company of America ("Travelers"), for defense and indemnity allegedly owed under the subcontract. Doc. 16. To this end it alleges that it was awarded a contract with the U.S. Department of the Army "to perform renovations and construction at the Volar Barracks, Buildings 2387 and 2389" at Fort Johnson and then entered into a subcontract with RRAC "under which RRAC was to provide certain services, including plumbing, HVAC and controls" at the same site. *Id.* at ¶¶ 5–6. Paragraph 7 of the subcontract, dated May 8, 2020, provides that RRAC "shall comply, at its expense, with all federal, state, municipal and local laws and other legal requirements" and that

> [RRAC] agrees to defend, indemnify and save Sauer harmless from and against any and all loss, injury, claims, actions, proceedings, liability, damages, fines, penalties, costs of compliance, consequential damages or any other costs, including legal fees and disbursements, caused or occasioned directly or indirectly by [RRAC's] actual or alleged violations or non-compliance with the requirements of this paragraph.

Doc. 78, att. 3, pp. 7–8. More broadly, Paragraph 13 states in relevant part:

> **13.1 Indemnity.** For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, including the first $1,000 of the Subcontract Price, [RRAC} hereby assumes the entire responsibility and liability for any damage or injury of any kind to persons (including death resulting therefrom) whether employees of [RRAC] or otherwise, and to property, which is caused by, results from, arises out of, or occurs in connection wit performance of the Work by [RRAC] or anyone acting through it. [RRAC] agrees to defend[,] indemnify and save harmless Sauer and Owner, their officers, agents, servants and employees (jointly the "Indemnitees") from and against any and all claims concerning damage or

>   injury to persons (including death resulting therefrom) or to property, whether or not such claims are based in part on Indemnitees' alleged active or passive negligence or participation in the wrong, or on their alleged breach of a statutory duty or obligation.

*Id.* at 11.

RRAC and Travelers maintain that the defense and indemnity provisions are unenforceable pursuant to the Louisiana (Construction) Anti-Indemnity Act ("LCAIA"), La. R.S. 9:2780.1. Doc. 40. Sauer now moves for summary judgment on its right to defense and indemnity, arguing that Louisiana law has no application on Fort Johnson as a federal enclave or, alternatively, that (1) as to any alleged negligence of Sauer, Sauer has triggered the exception to the statutory prohibition by paying for the required insurance as part of the contract price and (2) the LCAIA does not invalidate Travelers and RRAC's defense and indemnity obligations due to RRAC's own negligence. Doc. 76. Travelers and RRAC oppose this motion. Docs. 83, 85. They also bring their own motions for summary judgment, with opposition from Sauer, maintaining that the LCAIA applies to the subcontract and that Sauer cannot establish the requirements to trigger the insurance coverage exception. Docs. 78, 79.

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by

pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

### III.
### LAW & APPLICATION

**A. Applicability of State Law**

As the parties agree, Fort Johnson (formerly Fort Polk) is a federal enclave. *La. United Bus. Ass'n Cas. Ins. Co. v. J&J Maintenance, Inc.*, 133 F.Supp.3d 852, 861 (W.D. La. 2015). Sauer thus maintains that state law has no application. But under the federal enclave doctrine, state law in force at the time of transfer fills any gaps in federal law for

private rights. *Id.* (citing *Mater v. Holley*, 200 F.2d 123, 124 (5th Cir. 1952)). Further, Congress has created a right of action for wrongful deaths on federal enclaves but provided that state law will govern with respect to such actions and actions arising from personal injuries on federal enclaves:

> (a) Death.—In the case of the death of an individual by the neglect or wrongful act of another in a place subject to the exclusive jurisdiction of the United States within a State, a right of action shall exist as though the place were under the jurisdiction of the State in which the place is located.
> (b) Personal injury.—In a civil action brought to recover on account of an injury sustained in a place described in subsection (a), the rights of the parties shall be governed by the law of the State in which the place is located.

28 U.S.C. § 5000; *see also La. United Bus. Ass'n Cas. Ins. Co.*, 133 F.Supp.3d at 863–64; *accord Heym v. APG Housing, LLC*, 2024 WL 2302306, at *8 & n. 7 (D. Md. May 21, 2024). This suit is a wrongful death and survival action arising from the death of Logan Greer on a federal enclave in Louisiana. Louisiana law will, therefore, govern "the rights of the parties" and extend to indemnity claims against private parties arising from the same accident.

### B. Anti-Indemnity Provisions

The LAIAC provides, in relevant part:

> Notwithstanding any provision of law to the contrary and except as otherwise provided in this Section, any provision, clause, covenant, or agreement contained in, collateral to, or affecting a motor carrier transportation contract or construction contract which purports to indemnify, defend, or hold harmless, or has the effect of indemnifying, defending, or holding harmless, the indemnitee from or against any liability for loss or damage resulting from the negligence or intentional acts or omissions of the indemnitee, an agent or employee of the indemnitee, or a third party over which the indemnitor has no control is contrary to the public policy of this state and is null, void, and unenforceable.

La. R.S. § 9:2780.1(B). It contains certain exceptions, including the first at issue here:

> Nothing in this Section shall invalidate or prohibit the enforcement of the following:
> (1) Any clause in a construction contract containing the indemnitor's promise to indemnify, defend, or hold harmless the indemnitee or an agent or employee of the indemnitee if the contract also requires the indemnitor to obtain insurance to insure the obligation to indemnify, defend, or hold harmless and there is evidence that the indemnitor recovered the cost of the required insurance in the contract price. However, the indemnitor's liability under such clause shall be limited to the amount of the proceeds that were payable under the insurance policy or policies that the indemnitor was required to obtain.
> (2) Any clause in a construction contract that requires the indemnitor to procure insurance or name the indemnitee as an additional insured on the indemnitor's policy of insurance, but only to the extent that such additional insurance coverage provides coverage for liability due to an obligation to indemnify, defend, or hold harmless authorized pursuant to Paragraph (1) of this Subsection, provided that such insurance coverage is provided only when the indemnitor is at least partially at fault or otherwise liable for damages ex delicto or quasi ex delicto.

*Id.* at § 9:2780.1(I).

The Sauer-RRAC subcontract states that RRAC "shall, at its own expense, maintain in effect at all times during performance of the Work, not less than the following coverages and limits of insurance . . . ." Doc. 78, att. 3, p. 12. It also provides that RRAC must name Sauer as an additional insured on these policies. *Id.* Sauer asserts that the exception applies because RRAC's bid indicated that the lump sum contract price paid by Sauer would "include applicable taxes and insurance." Doc. 76, att. 4, p. 125. This provision appears to conflict with the subcontract, which specifically does "not include bids, proposals, advertisements or invitations to bid, or sample forms provided by the Subcontractor" in its terms. Doc. 78, att. 3, p. 19. Nevertheless, the statute only requires "evidence that the

indemnitor recovered the cost of the required insurance in the contract price." La. R.S. § 9:2780.1(I)(1). The bid indicates that the contract price may have been inflated to account for the required insurance premiums. But as the Eastern District recently recognized, "the fact that [the subcontractor] may have considered insurance coverage in calculating its bid does not establish that [the contractor] paid the full amount of the premium or that [the subcontractor] did not pay any material part."[1] *Barrios v. Centaur, LLC*, 345 F.Supp.3d 742, 749 (E.D. La. 2018), *rev'd on other grounds*, 942 F.3d 670 (5th Cir. 2019). Instead, the exception does not apply when "any material part" of the insurance cost is borne by the contractor—as the subcontract here appears to contemplate. *Id.* (citing *Marcel v. Placid Oil Co.*, 11 F.3d 563, 570 (5th Cir. 1994)).

The parties have submitted conflicting affidavits. Sauer's executive project manager Ryan Wampler indicates that the bid for a price inclusive of insurance was accepted and paid by Sauer. He states: Sauer was awarded the contract by the Army on March 4, 2020. Doc. 76, att. 4, ¶ 5. The RRAC subcontract was originally executed on March 8, based on a lump sum bid of $7.6 million that was valid through March 31, 2020. Doc. 76, att. 4, p. 125; *id.* at ¶¶ 10, 13–14. The bid provided that the lump sum price "includ[ed] applicable taxes & insurance." *Id.* at p. 125.

RRAC vice president John Parks states as follows: There were no additional insurance or indemnity requirements on the table when RRAC executed its bid, including in Sauer's RFP. Doc. 79, att. 3, ¶¶ 4-6. RRAC submitted bids to two general contractors,

---

[1] *Barrios* analyzed a nearly identical exception under the Louisiana Oilfield Anti-Indemnity Act ("LOAIA"), La. R.S. § 9:2780. The LCAIA "substantially mirrors" the LOAIA. *2700 Bohn Motor, LLC v. F.H. Myers Constr. Corp.*, 338 So.3d 500, 507 (La. Ct. App. 4th Cir. 2022).

including Sauer, that were under consideration by the Army for the project at Fort Johnson. *Id.* at ¶¶ 4–6. Sauer did not accept RRAC's bid but instead executed a separate subcontract after it was awarded the contract on the Fort Johnson project. *Id.* at ¶ 7. RRAC did not bill Sauer for the premiums on the applicable insurance and Sauer did not pay or reimburse RRAC for same. *Id.* at ¶ 10. Instead, RRAC calculated an additional 15 percent into its bid for overhead costs comprising "multiple potential administrative costs for a job, including but not limited to general liability insurance." Doc. 85, att. 2, ¶¶ 7–9. He also attaches an exhibit showing RRAC's calculation of costs, including overhead, for the job—based on a general percentage rather than any itemization of insurance premiums.

RRAC and Travelers maintain that there is a conflict between the bid's statement regarding insurance and the contract's terms. But the conflict is not irreconcilable: the contract's requirement that RRAC pay the cost of insurance could well contemplate the fact that RRAC is also receiving a lump sum from Sauer that expressly accounted for such additional costs. Additionally, while RRAC argues that the RFP lacked any indication of indemnity requirements that might have informed its bid, it has not supplied this document. Finally, RRAC omits the extent to which its contracts usually include indemnity/additional insured requirements to the extent that these might inform its general overhead calculations. Accordingly, Sauer has created an issue of fact as to whether it provided sufficient funds to cover the applicable indemnity/additional insured requirements and summary judgment is inappropriate on this issue.

Sauer also argues that another LAIAC exception applies, because it seeks indemnity for claims arising from RRAC's negligence. As noted above, the LAIAC applies to a

provision "which purports to indemnify, defend, or hold harmless, or has the effect of indemnifying, defending, or holding harmless, the indemnitee from or against any liability for loss or damage resulting from the negligence or intentional acts or omissions of the indemnitee, an agent or employee of the indemnitee, or a third party over which the indemnitor has no control[.]" La. R.S. 9:2780.1(B). Indemnity provisions are therefore voided under the LCAIA "only to the extent that they purport to require indemnification and/or defense where there is negligence or fault on the part of the indemnitee; otherwise, they are enforceable just as any other legal covenant." *Ladner v. Ochsner Baptist Med. Ctr., LLC*, __ So.3d __, 2024 WL 5054503, at *28 (La. Ct. App. 4th Cir. Dec. 10, 2024) (citing *Fontenot v. Chevron USA Inc.*, 676 So.2d 557, 563 (La. 1996)). Despite the numerous allegations[2] made against Sauer, there has been no determination yet as to whether it was negligent. *See id.* at *32 (LCAIA's application could not be resolved because indemnitee's fault had not been determined). Accordingly, the court is likewise unable to grant summary judgment based on these arguments.

---

[2] Plaintiff alleges that Sauer failed to inspect the water pipe and equipment, ensure that proper testing and safety protocols were in place, properly maintain the equipment, properly supervise the work, ensure that proper safety procedures were followed in connection with the load testing, ensure that the entities contracted to perform the load testing were qualified and properly trained, properly vet and select subcontractors, properly supervise the work of subcontractors, monitor the performance of and provide safety guidance to subcontractors, and comply with industry standards and OSHA regulations. Doc. 1, p. 4. Many of these claims appear to arise from RRAC's actions. Claims of negligent hiring, supervision, and training, however, are independent causes of action rather than analogs for vicarious liability, requiring an independent determination of the principal's fault. *Martin v. Thomas*, 346 So.3d 238, 247 (La. 2022).

## IV.
### CONCLUSION

For the reasons stated above, the Motion for Summary Judgment [doc. 76] filed by Sauer and the Motions for Summary Judgment [docs. 78, 79] filed by RRAC and Travelers will all be **DENIED**.

**THUS DONE AND SIGNED** in Chambers on the 6th day of February, 2025.

                **JAMES D. CAIN, JR.**
           **UNITED STATES DISTRICT JUDGE**